UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| CHARITY B., | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | 1:18-cv-00137-LEW |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

### The Administrative Findings

The Commissioner's final decision is the November 28, 2017 decision of the

Administrative Law Judge. (ALJ Decision, ECF No. 9-2.)[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level, fibromyalgia. According to the ALJ, the record demonstrates that despite Plaintiff's fibromyalgia, Plaintiff has the residual functional capacity (RFC) to perform medium-exertion work involving simple routine tasks, subject to certain postural and environmental restrictions. Based on Plaintiff's RFC finding and the testimony of a vocational expert, at step 5, the ALJ determined that Plaintiff is able to engage in substantial gainful activity, and identified four jobs Plaintiff could perform, which jobs consisted of one medium-exertion job, two light-exertion jobs, and one sedentary job. Given the step 5 finding, the ALJ found Plaintiff was not disabled for the period commencing with Plaintiff's alleged onset date and ending on the date of the decision.

**Standard of Review**

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), the Acting Commissioner's final decision is the ALJ's decision.

(1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**Discussion**

Plaintiff maintains the ALJ's decision is erroneous because (1) the ALJ failed to find the additional severe impairments of chronic fatigue syndrome and Lyme disease; (2) the ALJ improperly weighed the opinions of a non-examining consulting physician and Plaintiff's treating physicians; (3) the ALJ did not properly assess the testimony of a consulting psychiatrist and the opinion of a mental health provider; and (4) the ALJ relied in part on a nonexistent sedentary job to support her step 5 finding.

At step 2 of the sequential evaluation process, a claimant must demonstrate that he or she has impairments that are "severe" from a vocational perspective, and that the impairments meet the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). The step 2 requirement of "severe" impairment imposes a de minimis burden, designed to screen groundless claims. *McDonald v. Sec'y of HHS,* 795 F.2d 1118, 1123 (1st Cir. 1986). An impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to

3

perform basic work activities on a regular and continuing basis. *Id.*

At step 2, medical evidence is required to support a finding of severe impairment. 20 C.F.R. § 404.1521. See also Social Security Ruling 96-3p ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s).") (citation omitted). A diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity. *Dowell v. Colvin*, No. 2:13-cv-00246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014). Moreover, even severe impairments may be rendered non-severe through the ameliorative influence of medication and other forms of treatment. *Parsons v. Astrue*, No. 1:08-cv-218-JAW, 2009 WL 166552, at *2 n.2 (Jan. 23, 2009), *aff'd*, 2009 WL 361193 (D. Me. Feb. 12, 2009).

If an error occurred at step 2, remand is only appropriate when the claimant can demonstrate that an omitted impairment results in a restriction beyond the physical and mental limitations recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5. *Socobasin v. Astrue,* 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue,* No. 1:09–cv–220–JAW, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's

4

claim.")).

## A. Chronic Fatigue Syndrome

While Defendant argues Plaintiff waived her ability to contend that she suffers from CFS and that the CFS is a severe impairment, the ALJ's decision is supportable regardless of whether the issue was waived. In fact, the ALJ discussed CFS. (R. 27.) Importantly, Plaintiff's treating physician, George Butlers, M.D., reported that although Plaintiff's symptoms are consistent with CFS, he did not diagnose Plaintiff with CFS. (Ex. B21F, ECF No. 9-7.) Instead, he suggested the symptoms were the result of Lyme disease and fibromyalgia. (*Id*., R. 643.) On this record, the ALJ did not err when she declined to find that Plaintiff suffered from a severe impairment due to CFS.

## B. Lyme Disease

In support of her contention that the ALJ improperly failed to find that she suffered from Lyme disease and that the Lyme disease is a severe impairment, Plaintiff in part cites a 2014 lab report that was positive for Lyme. (Ex. B1F, ECF No. 9-7.) In addition, Plaintiff notes that Richard Dubocq, M.D., a treating source, determined that Plaintiff was suffering from Lyme disease and prescribed a course of treatment for Lyme, which treatment appears to be ongoing. (Ex. B7F.)

Furthermore, in September 2016, Plaintiff's primary care physician, George Butlers, M.D., referred Plaintiff to Saskia Cooper, M.D., of Inland Rheumatology, for assessment related to "polyarthralgia." (Ex. B6F.) Dr. Cooper's impression was that Plaintiff's "overall picture" was most consistent with "post-Lyme treatment syndrome, which should be managed in the same way fibromyalgia is." (R. 502.)

Defendant contends the ALJ's characterization of Plaintiff's Lyme disease symptoms as fibromyalgia is supportable given the lack of clinical findings generally associated with Lyme disease. (*Id.* at 2–3, citing ALJ Decision at R. 20.) The ALJ evaluated Plaintiff's claim of Lyme disease as follows:

> Although she has been treated with antibiotics for reported chronic Lyme disease and Babiosis, most of the purported symptoms have also been attributed to fibromyalgia, and examinations have failed to document joint swelling, synovitis, joint tenderness, or other significant objective clinical signs consistent with Lyme disease (Exhibits B-5F, B-6F, B-7F, B-12F, B-15F, B-18F, B-20F, B-21F, B-22F, B-26F, B-28F, B-31F, and B-32F). Furthermore, neurologist Markos Poulopoulos, M.D., stated on January 25, 2017, that the claimant's symptoms are not due to chronic Lyme disease (Exhibits B-18F, and B-25F), and rheumatologist Saskia G. Cooper, M.D., indicated in September, 2016, that while her joint pain is consistent with Lyme disease, it would be treated the same way as fibromyalgia (Exhibit B-6F).

(R. 20.)

Defendant's argument is unpersuasive. First, Dr. Poulopoulos's consultative report does not constitute substantial evidence to support the ALJ's determination that Plaintiff did not suffer from Lyme disease. Dr. Poulopoulos was asked to evaluate Plaintiff for her migraine disorder. (R. 623.) During the consultative examination, Plaintiff identified a number of symptoms that she experiences. In his "Assessment and Plan," Dr. Poulopoulos noted that he advised Plaintiff to take certain medications for her chronic migraine disorder, and then wrote: "Her symptoms are not due to chronic Lyme disease." (R. 625.) He did not describe the symptoms he was referencing, and he did not explain the bases of his conclusion. Given the purpose of the consultative examination (i.e., to assess Plaintiff's migraine disorder), given the lack of any explanation for Dr. Poulopoulos's assertion that

Plaintiff's symptoms are not due to Lyme disease, and given the evidence of record of a Lyme disease diagnosis, the ALJ cannot reasonably rely on Dr. Poulopoulos's report to support the conclusion that Plaintiff does not suffer from Lyme disease.

In addition, Dr. Cooper's statement that the joint pain, while consistent with Lyme disease, would be treated the same as fibromyalgia, does not provide substantial evidence to support the ALJ's determination. Significantly, Dr. Cooper did not state that Plaintiff does not suffer from Lyme disease. The mere fact that the treatment for the joint pain might be the same regardless of its cause does not rule out Lyme disease as a diagnosis. Furthermore, the ALJ's observation that Plaintiff's examinations have "failed to document joint swelling, synovitis, joint tenderness, or other significant objective clinical signs consistent with Lyme disease" cannot support the ALJ's determination. The "objective clinical signs consistent with Lyme disease" are properly the subject of medical expert opinion. While the ALJ cites to certain medical records, she references them to demonstrate the absence of the "objective clinical signs" that she has identified. In doing so, the ALJ improperly interpreted medical data.[2] *George v. Astrue*, No. 11-CV-356-PB, 2012 WL 2061699, at *6 (D.N.H. June 7, 2012).

Finally, the fact that the treatment for Lyme disease might be similar to the treatment for fibromyalgia does not render harmless the failure to find Lyme disease to be a severe

---

[2] To the extent Defendant maintains that the report of the Disability Determination Services reviewing consultant, Benjamin Weinberg, M.D. (Ex. B6A, R. 177–180), supports the determination because Dr. Weinberg did not identify Lyme disease as an impairment, Defendant's argument is unavailing. Dr. Weinberg did not identify Lyme disease as an "illness, injury or condition" for which Plaintiff claimed a disability, and the record does not otherwise establish that Dr. Weinberg was aware of Plaintiff's claim or the Lyme disease diagnosis. Under the circumstances, Dr. Weinberg's lack of discussion of Lyme disease does not constitute substantial evidence to support the ALJ's determination.

7

impairment. Even if the treatment would have been the same, the prognosis for and the limitations caused by each condition are not necessarily the same. The records of Dr. Dubocq, one of Plaintiff's treating physicians, suggest she continues to treat for the symptoms of Lyme disease.

The opinion of Drs. Dubocq, Plaintiff's treating physician who diagnosed Plaintiff with Lyme disease, demonstrates that the ALJ's failure to find Plaintiff suffered from an additional serious impairment (Lyme disease) was not harmless.[3] That is, Plaintiff's RFC does not consider the vocational limitations that result from a chronic condition that the evidence supports is a severe condition that produces a number of symptoms that must be considered in the assessment of Plaintiff's RFC. (E.g., Ex. B7F.) While the ALJ determined that "most" of the reported symptoms are attributed to fibromyalgia (R. 20), because the ALJ did not find Plaintiff to suffer from the severe condition of Lyme disease, the ALJ did not identify which symptoms were attributable to Lyme and did not assess the impact of the symptoms on Plaintiff's work capacity. Accordingly, remand for the ALJ to assess the impact of Plaintiff's Lyme disease on Plaintiff's RFC is warranted.

## Conclusion

Based on the foregoing analysis, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.[4]

---

[3] Because the ALJ erroneously determined that Plaintiff did not find Plaintiff suffered from another serious impairment in the form of Lyme disease, the Commissioner cannot reasonably rely upon the ALJ's discount of Dr. Dubocq's opinions to support a harmless error argument.

[4] Because I have concluded the ALJ erred at Step 2 and that remand is warranted, I have not assessed Plaintiff's remaining arguments.

8

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 16th day of January, 2019.